## MURRAY ET AL. *v.* STATE

[No. 30, September Term, 1957.]

---

1. *Elder v. Warfield, supra,* at page 398.

*Decided October 22, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Marvin Mandel,* with whom were *Louis H. Fried* and *Ginsberg & Ginsberg* on the brief, for appellants.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *J. Harold Grady, State's Attorney for Baltimore City,* and *John C. Weiss, Assistant State's Attorney,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The defendants, Murray and Collins, appeal from their conviction and sentence for larceny of a wallet belonging to one Corbin of a value of under $100. (Code, 1951, Art. 27, Sec. 406, as amended by Acts of 1952, Ch. 18.) They contend that the evidence is insufficient to sustain their conviction, which was by a judge sitting without a jury in the Criminal Court of Baltimore. The indictment contained a

count for robbery, on which the defendants were acquitted. The actual value of the wallet was trivial and there was no money in it, but there were some personal papers in it which belonged to Corbin.

The offense of which the defendants were convicted occurred at about 7:30 P. M. on Sunday, November 11, 1956, on Baltimore Street at or near the Fallsway. This is a well lighted area. Corbin had been drinking "right smart" (to use his own phrase), and one of the defendants, Murray, testified that Corbin was staggering. The defendants engaged Corbin in apparently friendly conversation, which Murray says was about Corbin getting home safely in view of his condition. While they were talking, Sergeant Glover, of the Baltimore Police Department, drove up in a Department car headed west on Baltimore Street and pulled up to the curb. He knew both of the defendants. There was testimony by Murray that Collins greeted the Sergeant and that they talked about some case in which the officer was interested and Collins was a witness. The Sergeant testified that the defendants walked away from Corbin, that he drove around the block, came back and parked on the other side of the street at a point where he could observe Corbin and the defendants, that he saw Collins step up behind Corbin and take hold of him and that he saw Murray take something from Corbin's pocket, go to a nearby lot and start to look into something. The Sergeant further testified that he then crossed the street and told the defendants to halt, that they were under arrest, that Collins did not move, but Murray started to walk away, that the Sergeant pursued Murray and the latter then dropped Corbin's wallet. The defendant Murray took the stand and contradicted much of the Sergeant's testimony.

Collins did not testify; but Sergeant Glover testified that in response to a question as to what he was doing, Collins replied: "once a thief, always a thief. When you fool around you expect to get caught." In response to a further question as to whose idea it was, Collins replied, according to Sergeant Glover's testimony: "When thieves travel together, it is both their idea." Collins' statements were not

considered by the trial judge as evidence against Murray, but as admissible only against Collins.

In this Court the appellants argued that there was no evidence of lack of consent on the part of Corbin to the taking of his wallet, and hence that the crime of larceny was not proven. We find no force in this contention.

Section 406 of Art. 27, of the Code (1951, as amended), under which the defendants were prosecuted, provides that, "If any person shall steal, take or carry away personal goods of another under the value of one hundred dollars and being thereof convicted he shall be deemed guilty of a misdemeanor * * *." This Section is under the heading of "Larceny." The common law meaning of larceny is thus stated in *Worthington v. State,* 58 Md. 403, at 409: "Larceny consists in the wrongful taking and carrying away the chattels of another with a felonious intent to convert them to the taker's own use, *. * *."* See also, *Williams v. U. S. Fidelity & Guaranty Co.,* 105 Md. 490, at 494, 66 A. 495, where it is said that "Larceny, at common law, was the felonious taking [of] the property of another against his will with the intent to convert it to the use of the taker or, as some authorities hold, the use of the taker or a third person." This was quoted in *Canton National Bank v. American Bonding & Trust Co.,* 111 Md. 41, at 44-45, 73 A. 684, where it was also said (111 Md. 45): "In every larceny there must * * * be a taking from the possession of the owner against his will."

*Radin's Law Dictionary* (1955) describes larceny as "the older name of theft" and adds that it is still used as the technical name in most common law jurisdictions. Theft is defined as "A crime consisting in the intentional taking, without legal warrant, of the personal property of another with the unlawful intention to deprive the owner of such property." The word "steal" which is one of the words used in defining the offense set forth in Sec. 406 of Art. 27 of the Code, *supra,* is defined by *Radin, op. cit.,* in this way: "To take property feloniously; to appropriate property without right." An offense under Sec. 406 is classed by that statute as a misdemeanor; and the word "larceny" is not actually used in the statute, as it is in Sec. 405 of Art. 27, which since the enact-

ment of Ch. 18 of the Acts of 1952 deals with persons "convicted of the crime of larceny to the value of one hundred dollars or upwards," whether as principals or as accessories before the fact, and classifies the offense as a felony.

Assuming that the common law meaning of larceny (with due allowance for the difference between a felony and a misdemeanor) should be considered as implicit in the offense denounced by Sec. 406 of Art. 27, or as equivalent to "steal" and that the phrase "steal, take or carry away personal goods of another" is not broader in meaning, it seems clear that the evidence on behalf of the State was sufficient to sustain a finding that there was a wrongful taking without the consent of the owner of the wallet. If, as seems apparent, or at the very least is properly inferable from the testimony, Corbin was unaware that his pocket was being picked, it could not be contended successfully that his wallet was removed with his consent. It makes no difference whether Corbin's ignorance of the theft was due to intoxication or to the skill of the defendants.

Accordingly, the judgment should be affirmed.

*Judgment affirmed, with costs.*